In re Albert Jacob KUNDERT, a/k/a
A. J. Kundert, Prince Kundert,
Bankrupt.
Edward A. SKROCH, Jr., Plaintiff
and Appellant,

v.

Albert Jacob KUNDERT, Defendant
and Respondent.

No. B3–74–142.

United States District Court,
D. North Dakota,
Southeastern Division.

Sept. 23, 1975.

Wayne O. Solberg, Solberg & Stewart, Fargo, N. D., for plaintiff and appellant.

Paul M. Hubbard, Conmy, Feste & Bossart, Ltd., Fargo, N. D., for defendant and respondent.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

Plaintiff, Edward A. Skroch, Jr., is a judgment creditor of the defendant, Albert Kundert, by virtue of a judgment in the amount of $26,835.00, entered in Cass County District Court on November 6, 1973. Subsequent to the entry of judgment, defendant filed a petition for bankruptcy on September 6, 1974. The plaintiff's judgment had not been satisfied.

Among the statutory exemptions which defendant claimed, pursuant to NDCC 47–18–01, was a homestead of approximately 41.5 acres of land located beyond the city limits of Fargo. The land constituted a large part of the bankrupt's estate.

On January 10, 1975, the plaintiff filed a complaint with the Bankruptcy Court, alleging the unconstitutionality of Section 47–18–01, on the grounds that it denies equal protection of the law. The state law provides:

" 'Homestead' defined—Exemption.— The homestead of every head of the family residing in this state shall consist:

1. If within a town plat, of not to exceed two acres of land upon which the claimant resides, and the improvements thereon, and not exceeding in value forty-five thousand dollars over and above liens or encumbrances or both.

2. If not within a town plat, of not to exceed in the aggregate more than one hundred sixty acres, and the dwelling house situated thereon in which the homestead claimant resides, with all its appurtenances, and all other improvements on said land regardless of the value of the same.

Such homestead shall be exempt from judgment lien and from execution of forced sale, except as otherwise provided in this chapter. In no case shall the homestead embrace different lots or tracts of land unless they are contiguous."

The essence of the plaintiff's complaint concerns the law's distinction between city and rural dwellers.

"That said Section 47–18–01 of the North Dakota Century Code is violative of the Fourteenth Amendment to the United States Constitution is that it constitutes a denial of equal protection of the laws between persons residing inside and persons residing outside of a town plat." *Plaintiff's Complaint at p. 2.*

The prayer for relief is as follows:

"WHEREFORE, Plaintiff prays that the Court make its order declaring Section 47–18–01 of the North Dakota Century Code unconstitutional and that the real estate owned by the defendant-bankrupt be included in the bankrupt estate; or, in the alternative, that the Court make its order declaring that the homestead exemption for the defendant-bankrupt be limited to two acres with a maximum value of forty thousand dollars, and that any real estate owned by the defendant-bankrupt in excess of that amount be included in the bankrupt estate."

The Bankruptcy Judge issued a memorandum and order on April 9, 1975, upholding the constitutionality of Section 47–18–01. The matter is now before this Court on Notice of Appeal filed by the plaintiff.

On application to the Court, the Attorney General of North Dakota was permitted to intervene as a defendant.

The Bankrupt has claimed as a homestead exemption 41.5 acres of land located in rural Cass County. The land was purchased some time during 1971, and has been used to conduct a limited farming operation. By affidavit, the Bankrupt states his position as follows:

"That he is the bankrupt in this case, having filed his voluntary petition on September 6, 1974;

That he is married and lives with his wife in the family home on rural acreage in Cass County, North Dakota, 9 miles northwest of Fargo, North Dakota;

That said rural acreage was purchased by himself and his wife in June of 1971, for the purpose of building the aforesaid home and the raising of crops, bees and pheasants;

That until his recent financial straits, he had raised honey bees on the property beginning in 1972;

That since 1973, he and his wife have raised up to a thousand pheasants at a time on the property;

That since the purchase of the property, approximately thirty-two (32) of the total of forty-one and a half (41.5) acres belonging to the bankrupt and his wife have been used for the raising of wheat, oats and alfalfa;

That he has derived his sole income for the last two years from the keeping of hives, the raising of pheasants, and the sale of crops and crop-rights from this small cropland;

That the sale of this homestead property would leave him with no livelihood, and would make him dependant upon his wife for support."

The defendant has raised the issue of plaintiff's standing to challenge the statute's constitutionality. The bankruptcy judge recognized the validity of the issue, but decided the case against the plaintiff on the merits. The Court finds the standing issue to be dispositive of the case.

■ The essence of standing is that "the party who invokes [judicial power] must be able to show . . . that he has sustained or is immediately in danger of sustaining some *direct* injury as the result of [a statute's] enforcement." *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). [Emphasis added].

The plaintiff does not allege that he, as a creditor, was adversely affected in relation to other creditors by the operation of NDCC 47–18–01. He is seeking only a judgment in the abstract upon the validity of the North Dakota homestead law.

Where standing is at issue, the question becomes whether the person whose standing is challenged is a proper party to request an adjudication of the constitutionality of NDCC 47–18–01. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). *cf. Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed. 2d 407 (1973).

"The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 633 (1962). In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." *Flast v. Cohen*, 392 U.S. at 99–100, 88 S.Ct. at 1952 (1968).

More explicitly the concept contemplates two different criteria. First, the litigant must satisfy to the Court that he has suffered some actual harm. *Association of Data-Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

"Recent decisions by this Court have greatly expanded the types of 'personal stake[s]' which are capable of conferring standing on a potential plaintiff. Compare *Tennessee Electric Power Co. v. TVA*, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939), and *Alabama Power Co. v. Ickes*, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938), with *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), and *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). But as we pointed out only last Term, 'broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.' *Sierra Club v. Morton*, 405 U.S. 727, 738, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). Although the law of standing has been greatly changed in the last 10 years, we have steadfastly adhered to the requirement that, at least in the absence of a statute expressly conferring standing, federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction. *See, e. g., Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–167, 92 S.Ct. 1965, 1968, 32 L.Ed.2d 627 (1972); *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Cf. *Laird v. Tatum*, 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972)." *Linda R. S. v. Richard D.*, 410 U.S. 614, 616–617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

The gravamen of the plaintiff's "harm" is that because the defendant was able to avail himself of the rural homestead section of NDCC 47–18–01, the remaining estate was reduced considerably. In the distribution of the bankrupt's estate, plaintiff, as a creditor, received less than he would otherwise have received if the defendant was limited to the urban dweller's homestead

right—namely, property valued up to $40,000.00, not exceeding two acres.[1]

> "The homestead exemption statute of the State of North Dakota constitutes a blatant classification of debtors with absolutely no factual foundation or basis therefor." *Appellants' Brief at 5.*

Essentially, the "actual harm" claimed by the plaintiff is he receives less money. In making such a claim, the appellant fails to allege a sufficient nexus between the "injury" and the government action which he attacks which would justify judicial intervention. The plaintiff as a creditor would appear to have standing only to challenge the constitutionality of a homestead exemption statute generally as applied to all debtors. He does not, however, challenge the existence of a homestead exemption, but merely the distinction between urban and city dwellers within the homestead exemption. The right of homestead is constitutionally mandated in North Dakota.

> "The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws, exempting from forced sale to all heads of families a homestead, the value of which shall be limited and defined by law; and a reasonable amount of personal property; the kind and value shall be fixed by law. This section shall not be construed to prevent liens againt the homestead for labor done and materials furnished in the improvement thereof, in such manner as may be prescribed by law." *Section 208, Constitution of North Dakota.*

Plaintiff frames his argument:

> "Clearly, defendant, by changing his residence from the City of Fargo to the tract of land located north of Fargo, has enhanced his position considerably to the detriment of his creditors by acquiring a homestead exemption which is unlimited in value and up to 160 acres in area, as opposed to $40,000.00 in value and up to 2 acres in size, which is the exemption available to an urban dweller. Plaintiff fails to see how this has not been detrimental to his position as a creditor of the defendant." *Appellant's Brief at 3.*

Plaintiff has not been denied equal protection with respect to other creditors. He does not challenge the general power of the state to provide a homestead exemption. The Fourteenth Amendment constitutional attack upon the statute is grounded on alleged denial of equal protection—obviously not to the plaintiff, but to a class entitled to a homestead exemption. There is no showing that plaintiff has been denied equal protection of the law.

The allegation of actual harm is but one aspect of the standing doctrine. Harm, however serious, is not sufficient unless the plaintiff can show that it constitutes an invasion of an interest "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. at 153, 90 S.Ct. at 830. Translated to the facts of this case, the second aspect of standing is whether the "harm" to the plaintiff flowing from the statute's distinction between rural and city dwellers is a deprivation of a civil right conferred upon the plaintiff by the Fourteenth Amendment to the Constitution of the United States.

The alleged equal protection issue would dissolve if the state granted the *rural* exemption to all persons whether they were urban or rural dwellers, and plaintiff's position as a creditor would be the same as it is now. He would have no standing to challenge such an exercise of power by the state and he would receive the same dividend in distribution that he has received. Clearly, his

---

1. Apparently the plaintiff does not challenge the defendant's status as being that of a rural dweller.

alleged harm does not flow from a violation of constitutional rights.

The Court holds the plaintiff-appellant has no standing to litigate the constitutional question which he has raised.

It is ordered that the appeal is dismissed.