DAVIS, Judge.
 

 This is a challenge by a trustee in bankruptcy to the validity of the Massachusetts common law tenancy by the entirety which prohibits the creditors of a wife from attaching her interest in entirety property, while at the same time allowing creditors of a husband to attach his interest. We hold primarily that the trustee is not a proper proponent of the invalidity of the alleged gender discrimination involved here, and that his own rights are not transgressed.
 

 The case arose in August 1977 when the plaintiff-appellant trustee in bankruptcy filed suit in the Bankruptcy Court,
 
 [1]
 
 seeking to reach the interest of defendant-appellee (Mrs. Harold) in real estate owned by her and her husband as tenants by the entirety. The Bankruptcy Judge ruled in favor of the trustee, holding that “the discriminatory rule forbidding alienation and attachment of a wife’s interest in a tenancy by the entirety is invalid, and the trustee may therefore reach that interest.” That decision was appealed to the District Court which reversed the order of the Bankruptcy Judge and dismissed the trustee’s complaint.
 
 [2]
 
 The trustee’s appeal is now before us.
 

 I
 

 The property which the trustee is attempting to reach is the marital domicile
 
 *264
 
 of the bankrupt and her husband,
 
 [3]
 
 and is held by them as tenants by the entirety. At all times relevant to this action, a Massachusetts tenancy by the entirety was governed by common law principles. Under those rules, as developed and clarified by Massachusetts case law, a husband and wife each possessed an indefeasible right of sur-vivorship in the whole tenancy.
 
 D’Ercole v. D’Ercole,
 
 407 F.Supp. 1377, 1380 (D.Mass.1976);
 
 Licker v. Gluskin,
 
 265 Mass. 403, 164 N.E. 613, 615 (1929). During their joint lifetimes, however, the husband had exclusive rights to possession, rents and profits from the property.
 
 Id.; Pineo v. White,
 
 320 Mass. 487, 70 N.E.2d 294, 297 (1946). The wife, on the other hand, had no rights in the property during her husband’s lifetime, and “could make no valid conveyance of any interest therein, without the assent * * * of the husband.”
 
 Licker, supra,
 
 164 N.E. at 615;
 
 Pineo, supra,
 
 70 N.E.2d at 297.
 
 [4]
 

 As a corollary of these common law incidents of entirety property the rights of creditors of husbands and wives in property held by the entirety were also unequal. A husband’s creditors could attach any interest which the husband held in the property.
 
 Raptes v. Cheros,
 
 259 Mass. 37, 155 N.E. 787, 787 (1927).
 

 A tenancy by the entirety may be taken on an execution issued against the husband, and the purchaser at the sale on execution may maintain a writ of entry against him for possession and title. Such possession and title will fail in the event of the wife surviving him.
 

 Id. Licker, supra,
 
 164 N.E. at 615.
 

 The wife’s creditors could attach nothing. The wife had no rights of possession or profits during her lifetime, and could make no valid conveyance of any interest in the property, absent her husband’s consent.
 
 Pineo, supra,
 
 70 N.E.2d at 297. “Since the wife cannot sell it herself, her creditors cannot sell it by resort to attachment and levy on an execution in an action at law.”
 
 Licker, supra,
 
 164 N.E. at 615.
 
 [5]
 

 It is this difference in treatment of women tenants by the entirety and their creditors, and men tenants by the entirety and their creditors, which is the subject of the trustee’s complaint.
 
 [6]
 
 It is said that the gender-based distinction (relating to attachment of entirety property) which is part of the Massachusetts common law tenancy by the entirety is impermissible discrimination on the basis of sex and violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, as well as the Equal Rights Amendment of the Massachusetts Constitution.
 

 II
 

 At the threshold we must determine whether the trustee has standing to raise this type of sex discrimination. In essence, the question “is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.”
 
 Warth
 
 
 *265
 

 v. Seldin,
 
 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). The Supreme Court has divided this inquiry into two parts—
 

 [f]irst, whether the plaintiff-respondents allege “injury in fact,” that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court’s Art. Ill jurisdiction, and, second, whether as a prudential matter, the plaintiff-respondents are proper proponents of the particular legal rights on which they base their suit.
 

 Singleton v. Wulff,
 
 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed. 826 (1976).
 
 Accord, Warth, supra,
 
 422 U.S. at 498-500, 95 S.Ct. at 2204-2205.
 

 The parties do not dispute the presence of the first part of this test — a concrete injury in fact — and we agree. The trustee, as a representative of the bankrupt defendant’s creditors, will suffer an economic injury if he cannot reach the wife’s interest, or what should be her interest in the tenancy property. Economic injury, even of an indirect nature, will establish sufficient concrete adverseness to meet the Article III “case or controversy” test, discussed in
 
 Singleton, supra.
 

 The second part of the
 
 Singleton
 
 test presents the obstacle to the trustee’s suit. The requirement that a litigant be the proper party to assert the particular right at issue stems from principles of judicial restraint and self-governance, and without it,
 

 the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.
 

 Warth, supra,
 
 422 U.S. at 500, 95 S.Ct. at 2205.
 
 [7]
 

 The trustee is attempting to rest his claim to relief primarily on the legal rights of third parties
 
 i. e.,
 
 the rights of women or men tenants by the entirety not to be im-permissibly discriminated against on the basis of sex. But the trustee has no such relationship to the wife or the husband as to enable him to raise this contention:
 

 [E]ven when the plaintiff has alleged injury sufficient to meet the “case or controversy” requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.
 

 Warth, supra,
 
 422 U.S. at 499, 95 S.Ct. at 2205.
 
 See also, Singleton, supra,
 
 428 U.S. at 113-14, 96 S.Ct. at 2873-74;
 
 Barrows v. Jackson,
 
 346 U.S. 249, 255-56, 73 S.Ct. 1031, 1034-35, 97 L.Ed. 1586 (1953);
 
 Tileston v. Ullman,
 
 318 U.S. 44, 46, 63 S.Ct. 493, 494, 87 L.Ed. 603 (1943). This long-standing rule disfavoring the presentation of
 
 jus tertii
 
 is based on two important considerations.
 

 “First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not.”
 
 Singleton, supra,
 
 428 U.S. at 113-14, 96 S.Ct. at 2873-74, citing
 
 Ashwander v. TVA,
 
 297 U.S. 288, 345-48, 56 S.Ct. 466, 482-83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).
 
 See also Frissell v. Rizzo,
 
 597 F.2d 840, 848 (3rd Cir.)
 
 cert. denied,
 
 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). It is obvious that the present case falls squarely within this rationale underlying the general rule. The bankrupt wife whose alleged rights are being asserted by the trustee is specifically asking this court that those “rights”
 
 not
 
 be granted to her. She not only does not wish to assert any rights she may have regarding discrimination on the
 
 *266
 
 basis of her sex, but she could be economically injured if the challenged aspect of the tenancy by the entirety were struck down as invalid. This is a classic example of the Supreme Court’s principle preventing a litigant from asserting the third-party rights of those who do not want such rights asserted. The same is true if it is the husband’s rights against discrimination which are being asserted by the trustee. There is nothing to show that the husband wishes his wife’s interest in the marital domicile to be reached; if that happened, it is hard to see how the husband could fail to be adversely discommoded in his own home.
 

 Another reason for the reluctance of courts to hear controversies where the claim to relief is based on the rights of a third party is that “third parties themselves usually will be the best proponents of their own rights.”
 
 Singleton, supra,
 
 428 U.S. at 114, 96 S.Ct. at 2874. This is closely tied to the desirability of preventing an “inappropriate party from forcing a judicial resolution of an issue.”
 
 Rogers v. Brockette,
 
 588 F.2d 1057, 1062 (5th Cir.),
 
 cert. denied,
 
 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979). It also ensures that the court will approach the case from the point of view of those whose rights are at stake.
 
 Id.
 

 [8]
 

 If litigants are permitted to base their claims on the rights of another, “it may well be that the thrust or timing of, or choice of forum for, the action in which the rights of the third party are raised, conflicts importantly with the third party’s underlying interest.”
 
 Frissell, supra,
 
 597 F.2d at 848. By recognizing that third parties are generally the best proponents of their own rights, courts enforce a “best plaintiff rule,” and “avoid needless and perhaps counterproductive litigation.”
 
 Id.
 

 As we have pointed out, women tenants by the entirety are the best proponents of their own rights, and a trustee in bankruptcy is not in a superior position to raise and argue those rights. Here, the trustee is in an adversarial relationship to the bankrupt, and is concerned with furthering his own interests, which are diametrically opposed to the bankrupt’s desire to protect her property from her creditors. Similarly for the bankrupt’s husband who has no interest in having his wife’s interests seized or reached, probably to his own injury. Because of their differing goals, the trustee is an inappropriate party to assert the rights of either. There is no question that the thrust of the present suit “conflicts importantly with the third party’s underlying interest.” Fris
 
 sell, supra,
 
 597 F.2d at 848. It is their rights that are at stake, and it is therefore appropriate that a court approach the case from their point of view.
 
 Rogers,
 
 supra, 588 F.2d at 1062. While this may not be a controlling factor when a litigant is asserting the rights of a third party for the latter’s benefit, it is of critical importance in these circumstances in which invalidation of the common law entirety tenancy would most probably harm the third party whose rights are being raised. The trustee is attempting to use the bankrupt’s own rights against her, or the husband’s rights against him. In this situation, it is hard to imagine how the trustee could be as good a proponent of the bankrupt’s or husband’s rights, as the bankrupt herself or her husband could be, and under the rationale set forth in
 
 Singleton
 
 the general rule disfavoring arguments of
 
 jus tertii
 
 controls.
 

 The trustee says, however, that notwithstanding the general rule this is a proper setting for allowing him to present and argue the woman’s or husband’s case against gender discrimination. We disagree because we find that the cases relied on (and the exceptions delineated by those
 
 *267
 
 cases) are inapposite. While we recognize that “[i]n some circumstances, countervailing considerations may outweigh the concerns underlying the usual reluctance to exert judicial power when the plaintiff’s claim to relief rests on the legal rights of third parties,”
 
 Warth, supra,
 
 422 U.S. at 500-501, 95 S.Ct. at 2205-2206, we do not see those or comparable countervailing considerations as present here.
 

 The trustee cites a number of decisions for the proposition that the assertion of another’s rights can be proper in these circumstances.
 
 See, Singleton, supra,
 
 428 U.S. at 114-18, 96 S.Ct. at 2874-76;
 
 Pierce v. Society of Sisters,
 
 268 U.S. 510,45 S.Ct. 571, 69 L.Ed. 1070 (1925);
 
 Barrows, supra,
 
 346 U.S. at 257-60, 73 S.Ct. at 1035-37;
 
 Eisenstadt v. Baird,
 
 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972);
 
 Griswold v. Connecticut,
 
 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965);
 
 Craig v. Boren,
 
 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976),
 
 reh’g denied,
 
 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977). But those cases all involved situations where the third-party rights being asserted were congruent with the interests of the third party. For example, in
 
 Singleton, Baird,
 
 and
 
 Griswold, supra,
 
 the litigants who favored birth control or abortion were permitted to raise the rights of women to receive contraceptives and have abortions. 428 U.S. at 114-16, 96 S.Ct. at 2874-75; 405 U.S. at 445-46, 92 S.Ct. at 1034; 381 U.S. at 481, 85 S.Ct. at 1679. In
 
 Barrows, supra,
 
 a white defendant, who was an unwilling party to a racially restrictive covenant, was allowed to attack the covenant on the ground that it violated the rights of prospective black purchasers. 346 U.S. at 257, 73 S.Ct. at 1035. In
 
 Pierce, supra,
 
 a private school was allowed to assert the rights of its students and their parents to enjoin enforcement of an act requiring compulsory public education. 268 U.S. at 535-36, 45 S.Ct. at 573-74.
 
 Craig, supra,
 
 allowed a vendor of beer to advocate the rights of third party males between the ages of 18 and 21 to attack a statute allowing women to obtain beer at age 18 but requiring men to be 21. 429 U.S. at 195 -97, 97 S.Ct. at 455-56.
 

 There are several considerations, reflected in those decisions, which are important in determining when a litigant may properly claim relief on the basis of third party rights, and none is present here. One is whether there is some genuine obstacle making it impossible or difficult for third parties to assert their own rights.
 
 Singleton, supra,
 
 428 U.S. at 115-16, 96 S.Ct. at 2874 -75. The reasoning behind this exception to the general rule is that “[i]f there is some genuine obstacle to such assertion, * * the third party’s absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the rights’ best available proponent.”
 
 Id.
 
 at 116, 96 S.Ct. at 2875.
 
 See also, Barrows, supra,
 
 346 U.S. at 257, 73 S.Ct. at 1035;
 
 Baird, supra,
 
 405 U.S. at 446, 92 S.Ct. at 1034. But in this case the third party whose rights are being asserted— whether it be wife or husband — is fully capable of acting to protect her or his own rights if she or he desires to do so. Neither has been impeded in any way from attacking the common law tenancy by the entirety on the ground that it discriminates on the basis of sex. “[I]n the absence of a showing that such an obstacle exists, the third party has presumably consented to, or does not view himself as injured by, the challenged state conduct.”
 
 Frissell, supra,
 
 597 F.2d at 848 (citing
 
 Singleton, supra).
 
 A related exception occurs when presentation of a third party’s right is necessary to avoid dilution of or adverse impact on the third party’s rights.
 
 Griswold, supra,
 
 381 U.S. at 481, 85 S.Ct. at 1679;
 
 Baird, supra,
 
 405 U.S. at 445-46, 92 S.Ct. at 1034;
 
 Barrows, supra,
 
 346 U.S. at 259, 73 S.Ct. at 1036.
 
 See also, Craig, supra,
 
 429 U.S. at 195, 97 S.Ct. at 455. This exception has no validity here because the trustee’s assertion of the bankrupt’s constitutional rights will in no way prevent the dilution of her or his rights or avoid an adverse impact on him or her. On the contrary, both will suffer.
 
 [9]
 

 
 *268
 
 Another exception has been found where there is a close and substantial relationship between the litigant and the person whose rights he asserts.
 
 Singleton, supra,
 
 428 U.S. at 114, 96 S.Ct. at 2874;
 
 Griswold, supra,
 
 381 U.S. at 481, 85 S.Ct. at 1679;
 
 Baird, supra,
 
 405 U.S. at 445, 92 S.Ct. at 1034. In those cases the Court found a close, strong relationship in which the litigant was acting to protect and further the rights of the third party.
 
 Singleton, supra,
 
 428 U.S. at 114, 96 S.Ct. at 2874;
 
 Baird, supra,
 
 405 U.S. at 445, 92 S.Ct. at 1034. The relationship between the trustee and the bankrupt is totally different. The nexus is involuntarily imposed as a condition of bankruptcy, and is by its very nature adversarial, if not hostile. It is not the type of bond which would come within the scope of the confidential, intimate, supportive relationships found in the Supreme Court decisions. Neither is there a close or direct relationship between the trustee and the bankrupt’s husband so that the trustee would in reality be pursuing the husband’s own interest.
 

 Since all of the underlying reasons for disfavoring presentation of a
 
 jus tertii,
 
 exist in this case, and none of the exceptions to that general rule apply, we hold that the trustee may not seek relief based on the rights of a third-party tenant by the entirety against gender discrimination.
 
 [10]
 

 Ill
 

 The trustee does have the right to raise his
 
 own
 
 rights and those of the creditors he represents. In that connection he can and does argue that Massachusetts violates the Equal Protection Clause by denying to creditors of wives legal remedies equal to those provided creditors of husbands. Because, however, that particular discrimination (if it be such) is based not on the trustee’s or a creditor’s own sex, the Massachusetts law need meet only the “rational basis” test in order to be upheld.
 
 See Williamson v. Lee Optical Co.,
 
 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). Fully stated, that standard requires that the challenged statute be “rationally related to a legitimate state interest.”
 
 See San Antonio Independent School Dist. v. Rodriguez,
 
 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16,
 
 reh’g denied,
 
 411 U.S. 959 (1973).
 

 This standard, of course, is a highly unusual one to apply to a statute challenged on the ground that it discriminates on the basis of sex. The normal standard of review applied to such a statute — in any case in which it was challenged by a party asserting the rights of women — is the “intermediate” standard, less exacting than “necessary to a compelling state interest” but more so than “rationally related to a legitimate state interest”: a distinction “must serve important governmental objectives and * * * must be substantially related to the achievement of those objectives”.
 
 Wengler v. Druggists Mutual Insurance Co.,
 
 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980);
 
 Craig v. Boren, supra,
 
 429 U.S. at 197, 97 S.Ct. at 456.
 

 We have grave reservations as to whether the distinction before us could survive review under this normally appropriate standard. Two possible state interests may be advanced as justifying it: one in protecting the interests of innocent nondebtor spouses generally in property held by the entirety, and the other in protecting the interests of husbands specifically from debts incurred by their wives. The first is
 
 *269
 
 clearly a legitimate and perhaps important interest, but it is far from clear that the law is substantially or even rationally related to that end. Its limitation to only one half of the relevant situations renders it dramatically underinclusive as a means of attaining that end, and indeed the qualitative nature of that limitation presents such a sharp and dramatic lack of fit between means and end as to suggest that no such purpose was intended. Rather, the law seems principally designed to serve the second, very different possible interest. It is without doubt rationally and perhaps substantially related to that aim, but here it is far from clear that any such explicitly discriminatory purpose may be said to be an important or even legitimate governmental objective. “It is now well recognized that * * * decisions cannot be predicated on mere ‘stereotyped’ impressions about the characteristics of males or females”,
 
 Los Angeles Dept. of Water & Power v. Manhart,
 
 435 U.S. 702, 707, 98 S.Ct. 1370, 1374, 55 L.Ed.2d 657 (1978); since it seems clearly to embody such a stereotype, it is difficult to see how this scheme could constitute an important interest.
 

 But in light of the minimal standard of review called for in this case because of the nature of the rights the plaintiff may assert, we cannot conclude either that the law is utterly unrelated to the first interest or that the second interest is wholly illegitimate. Because gender is not a suspect classification,
 
 see Frontiero v. Richardson,
 
 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (position that gender is a suspect classification drawing vote of only four Justices), statutes that discriminate on the basis of it are not “presumptively unconstitutional”,
 
 see Mobile v. Bolden,
 
 446 U.S. 55, 75, 100 S.Ct. 1490, 1504, 64 L.Ed.2d 47 (1980), and thus the law before us is presumptively valid.
 
 See, e. g., In re Kundert, 401
 
 F.Supp. 822, 825-26 (D.N.D.1975) (no showing of denial of equal protection where creditors challenged state law creating a greater homestead exemption for rural than for urban homesteads). We thus reach the anomalous position that a law that is highly unlikely to survive a challenge asserting women’s right to equal protection of the laws is nonetheless valid as against a trustee who may assert only the right of creditors of wives to be treated equally to creditors of husbands. However anomalous it may be, we think this holding necessary and appropriate in the unusual posture of this case.
 

 IV
 

 Finally, we note, that even if we were to invalidate, on the ground of gender discrimination, the common law distinction between the treatment of the entirety property of husbands and wives, we would be faced with the problem of whether to equalize by depriving the wife of immunity or of equating the rules by granting immunity to the husband. The property here was the marital domicile which was the principal residence of the wife and husband. Under the 1979 statute that property is immune from being reached by creditors of either the husband or the wife.
 
 See
 
 notes, 4, 5, and 7,
 
 supra.
 
 If we were required to equalize and were to decide for ourselves which path of equalization to take, we would in all probability follow the lead of the 1979 statute as representing the considered and latest views of the Massachusetts General Court on the immunity of a married couple’s home. Moreover, if we were to judge what the Supreme Judicial Court of Massachusetts would do for a pre-1979 case we think they would come to the same conclusion.
 
 Cf. Wengler, supra,
 
 446 U.S. at 151, 100 S.Ct. at 1546. On that view the trustee would, of course, be barred from recovery here; the principal residence would be immune from the creditors of both wife and husband. We do not place our decision squarely on this ground, but these considerations support our result that no unconstitutional discrimination can be or has been shown by the trustee.
 

 Affirmed.
 

 [1]
 

 . The defendant filed a voluntary petition in bankruptcy in May 1977. The only significant unsecured creditor was a judgment creditor for $9,524.48, the amount resulting from a suit against the defendant for breach of an employment contract.
 

 [2]
 

 . The District Judge did not discuss the trustee’s right to challenge the allegedly gender-discriminatory aspects of the Massachusetts tenancy by the entirety. Rather, he based his reversal on the grounds that the Bankruptcy Judge erroneously concluded that the bankrupt was seeking to use the protection of the tenancy by the entirety to frustrate her creditors by exempting her assets, and also that the creditors were discriminated against by a distinction based on sex. The District Court found that there was no showing of fraud on the part of the bankrupt and that the exemption of the property resulted, not from a sexually discriminatory policy of the state, but from the bankrupt’s choice in holding the property as a tenant by the entirety rather than in some other manner. We agree, as do both sides, that this is not a case of fraud by the bankrupt (or attempted fraud) on her creditors, and we need not reach the correctness of the other holding of the District Court.
 

 [3]
 

 . During the time between December 1976 and July 1977, the bankrupt and her husband were in the process of selling one home and purchasing another. For our purposes, this was simply a substitution of one entirety property for another (although there was some overlap when the second house was purchased and the first had not yet been sold) which has no bearing on the outcome of the case.
 

 [4]
 

 . In 1979, the husband’s exclusive rights were abolished by statute, see, M.G.L. ch. 209 § 1, and a husband and wife are now “equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety.”
 
 Id
 
 However, this amendment was not retroactive and is thus inapplicable to the present suit.
 

 [5]
 

 . With respect to the principal residence of the couple as of 1979, “[t]he interest of a debtor spouse in [such] property * * * shall not be subject to seizure or execution by a creditor of such debtor spouse * * M.G.L. ch. 209 § 1.
 

 [6]
 

 . Neither defendant-appellee nor her husband had acquired a homestead exemption in the marital domicile under Massachusetts law.
 
 See, e. g„
 
 M.G.L. ch. 188 § 1 (limiting amount of homestead exemption to $30,000 in 1976 and providing an exception to the exemption for debts contracted prior to acquiring of homestead estate), and § 2 (regarding the mode of acquisition of a homestead exemption by certain affirmative acts).
 

 [7]
 

 . That is what happened when the Massachusetts legislature acted in 1979 to remove the challenged attachment characteristic of tenancies by the entirety.
 
 See
 
 note 5,
 
 supra.
 
 The legislature’s removal of the allegedly sexually-biased attachment characteristics was performed in such a way that the creditor would have lost this suit even under the new law, since it protects the marital domicile of both husband and wife, rather than subjecting both to attachment and execution.
 
 Id. See
 
 Part IV,
 
 infra.
 

 [8]
 

 . For example,
 

 [a] case arising under a statute restricting a bank’s activities * * * may appear in one light when seen from the point of view of the bank’s competitors and quite another from the perspective of the bank’s customers. The decision whether the customers or competitors have standing to raise a claim is important partly because it affects the way the court is likely to focus on the issues.
 

 Rogers, supra,
 
 588 F.2d at 1062.
 

 This is particularly true where, as here, the third party’s “rights” are being used as a means of helping the litigant to the detriment of the person or persons whose rights are being asserted.
 

 [9]
 

 . The trustee argues that the wife tenant by the • entirety would be unlikely to attack the constitutionality of the tenancy since if she was successful in doing so her creditors could attack
 
 *268
 
 her interest. However, the fact that the bankrupt is unlikely to attack the tenancy, does not give the trustee the right to do so. See,
 
 Schlesinger v. Reservists Committee to Stop the War,
 
 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974). The same is true for the husband who has little or no interest in having his home attached or sold by his wife’s creditors or trustee.
 

 [10]
 

 . We consider that the principles announced by the Supreme Court of the United States also apply to the claim under the Massachusetts Constitution. In the absence of a holding by the Commonwealth’s Supreme Judicial Court, we assume that that court would apply principles akin to the federal rules to this type of case.