WENGLER *v.* DRUGGISTS MUTUAL INSURANCE CO.
ET AL.

No. 79–381.  Argued February 25, 1980—Decided April 22, 1980

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, MARSHALL, BLACKMUN, and POWELL, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, *post,* p. 154. REHNQUIST, J., filed a dissenting statement, *post,* p. 153.

*John W. Reid II* argued the cause and filed a brief for appellant.

*Ralph C. Kleinschmidt* argued the cause for appellees. With him on the brief was *Gerre S. Langton.**

MR. JUSTICE WHITE delivered the opinion of the Court.

This case challenges under the Equal Protection Clause of the Fourteenth Amendment a provision of the Missouri workers' compensation laws, Mo. Rev. Stat. § 287.240 (Supp. 1979), which is claimed to involve an invalid gender-based discrimination.

I

The facts are not in dispute. On February 11, 1977, Ruth Wengler, wife of appellant Paul J. Wengler, died in a work-related accident in the parking lot of her employer, appellee Dicus Prescription Drugs, Inc. Appellant filed a claim for death benefits under Mo. Rev. Stat. § 287.240 (Supp. 1979),[1]

---

*\*Ruth Bader Ginsburg* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

*Solicitor General McCree, Assistant Attorney General Days, Stuart A. Smith, Brian K. Landsberg,* and *Mark L. Gross* filed a brief for the United States as *amicus curiae.*

[1] Missouri Rev. Stat. § 287.240 (Supp. 1979) provides in its entirety (emphasis added):

"If the injury causes death, either with or without disability, the compensation therefor shall be as provided in this section:

"(1) In all cases the employer shall pay direct to the persons furnishing the same the reasonable expense of the burial of the deceased employee not exceeding two thousand dollars. But no person shall be entitled to compensation for the burial expenses of a deceased employee unless he has furnished the same by authority of the widow or widower, the nearest relative of the deceased employee in the county of his death, his personal representative, or the employer, who shall have the right to give the authority in the order named. All fees and charges under this section shall be fair and reasonable, shall be subject to regulation by the division or the commission and shall be limited to such as are fair and reasonable for similar·service to persons of a like standard of living. The division or

under which a widower is not entitled to death benefits unless he either is mentally or physically incapacitated from wage

the commission shall also have jurisdiction to hear and determine all disputes as to the charges. If the deceased employee leaves no dependents the death benefit in this subdivision provided shall be the limit of the liability of the employer under this chapter on account of the death, except as herein provided for burial expenses and except as provided in section 287.140; provided, that in all cases when the employer admits or does not deny liability for the burial expense, it shall be paid within thirty days after written notice, that the service has been rendered, has been delivered to the employer. The notice may be sent by registered mail, return receipt requested, or may be made by personal delivery;

"(2) *The employer shall* also *pay to* the total *dependents of the employee a death benefit* on the basis of sixty-six and two-thirds percent of the employee's average weekly earnings during the year immediately preceding the injury as provided in section 287.250. Compensation shall be payable in installments in the same manner that compensation is required to be paid under this chapter, but in no case be less than at the rate of sixteen dollars per week nor more than one hundred twenty dollars per week or as provided in section 287.160. If there is a total dependent, no death benefit shall be payable to partial dependents or any other persons except as provided in subdivision (1);

"(3) If there are partial dependents, and no total dependents, a part of the death benefit herein provided in the case of total dependents, determined by the proportion of his contributions to all partial dependents by the employee at the time of the injury, shall be paid by the employer to each of the dependents proportionately;

"(4) *The word 'dependent' as . used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of the injury. The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee and any death benefit shall be payable to them to the exclusion of other total dependents:*

"(a) *A wife upon a husband legally liable for her support, and a husband mentally or physically incapacitated from wage earning upon a wife;* provided, that on the death or remarriage of a widow or widower, the death benefit shall cease unless there be other total dependents entitled to any death benefit under this chapter. In the event of remarriage, a lump sum payment equal in amount to the benefits due for a period of two

earning or proves actual dependence on his wife's earnings. In contrast, a widow qualifies for death benefits without hav-

---

years shall be paid to the widow or widower. Thereupon the periodic death benefits shall cease unless there are other total dependents entitled to any death benefit under this chapter in which event the periodic benefits to which said widow or widower would have been entitled had he or she not died or remarried, shall be divided among such other total dependents and paid to them during their period of entitlement under this chapter;

"(b) A natural, posthumous, or adopted child or children, whether legitimate or illegitimate, under the age of eighteen years, or over that age if physically or mentally incapacitated from wage earning, upon the parent legally liable for the support or with whom he is living at the time of the death of the parent. In case there is a wife or a husband mentally or physically incapacitated from wage earning, dependent upon a wife, and a child or more than one child thus dependent, the death benefit shall be divided among them in such proportion as may be determined by the commission after considering their ages and other facts bearing on the dependency. In all other cases questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury, and in such other cases if there is more than one person wholly dependent the death benefit shall be divided equally among them. The payment of death benefits to a child or other dependent as provided in this paragraph shall cease when the dependent dies, attains the age of eighteen years, or becomes physically and mentally capable of wage earning over that age, or until twenty-two years of age if the child of the deceased is in attendance and remains as a full-time student in any accredited educational institution, or if at eighteen years of age the dependent child is a member of the armed forces of the United States on active duty; provided, however, that such dependent child shall be entitled to compensation during four years of full-time attendance at a fully accredited educational institution to commence prior to twenty-three years of age and immediately upon cessation of his active duty in the armed forces, unless there are other total dependents entitled to the death benefit under this chapter;

"(5) The division or the commission may, in its discretion, order or award the share of compensation of any such child to be paid to the parent, grandparent, or other adult next of kin or legal guardian of the child for the latter's support, maintenance and education, which order or award upon notice to the parties may be modified from time to time by the commission in its discretion with respect to the person to whom shall

ing to prove actual dependence on her husband's earnings.[2]

Appellant stipulated that he was neither incapacitated nor dependent on his wife's earnings, but argued that, owing to its disparate treatment of similarly situated widows and widowers, § 287.240 violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The claim was administratively denied, but the Circuit Court of Madison County reversed, holding that § 287.240 violated the Equal Protection Clause because the statutory restriction on a widower's recovery of death benefits did not also apply to a surviving wife. Dicus and its insurer, appellee Druggists Mutual Insurance Co., were ordered to pay death benefits to appellant in the appropriate amount. App. to Juris. Statement A22–A25.

The Missouri Supreme Court, distinguishing certain cases in this Court, reversed the Circuit Court's decision. The equal protection challenge to § 287.240 failed because "the substantive difference in the economic standing of working men and women justifies the advantage that [§ 287.240] administratively gives to a widow." 583 S. W. 2d 162, 168 (1979).

_____

be paid the amount of the order or award remaining unpaid at the time of the modification;

"(6) The payments of compensation by the employer in accordance with the order or award of the division or the commission shall discharge the employer from all further obligations as to the compensation;

"(7) All death benefits in this chapter shall be paid in installments in the same manner as provided for disability compensation;

"(8) Every employer shall keep a record of the correct names and addresses of the dependents of each of his employees, and upon the death of an employee by accident arising out of and in the course of his employment shall so far as possible immediately furnish the division with said names and addresses."

[2] At the time of her death Mrs. Wengler's wages were $69 per week. Had appellant prevailed in his attempt to receive full death benefits under the statute, his compensation would have been $46 per week. App. to Juris. Statement A23; see Mo. Rev. Stat. § 287.240 (2) (Supp. 1979). These benefits would have continued until appellant's death or remarriage. § 287.240 (4) (a).

Because the decision of the Supreme Court of Missouri arguably conflicted with our precedents, we noted probable jurisdiction. 444 U. S. 924 (1979). We now reverse.[3]

## II

The Missouri law indisputably mandates gender-based discrimination. Although the Missouri Supreme Court was of the view that the law favored, rather than disfavored, women, it is apparent that the statute discriminates against both men and women. The provision discriminates against a woman covered by the Missouri workers' compensation system since, in the case of her death, benefits are payable to her spouse only if he is mentally or physically incapacitated or was to some extent dependent upon her. Under these tests, Mrs. Wengler's spouse was entitled to no benefits. If Mr. Wengler had died, however, Mrs. Wengler would have been conclusively presumed to be dependent and would have been paid the statutory amount for life or until she remarried even though she may not in fact have been dependent on Mr. Wengler. The benefits, therefore, that the working woman can expect to be paid to her spouse in the case of her work-related death are less than those payable to the spouse of the deceased male wage earner.

It is this kind of discrimination against working women that our cases have identified and in the circumstances found unjustified. At issue in *Weinberger* v. *Wiesenfeld*, 420 U. S. 636 (1975), was a provision in the Social Security Act, 42 U. S. C. § 402 (g), that granted survivors' benefits based on

---

[3] Recent decisions in three States have held unconstitutional workers' compensation statutes with presumptions of dependency identical to that at issue in this case. *Arp* v. *Workers' Compensation Appeals Board,* 19 Cal. 3d 395, 563 P. 2d 849 (1977); *Passante* v. *Walden Printing Co.,* 53 App. Div. 2d 8, 385 N. Y. S. 2d 178 (1976); *Tomarchio* v. *Township of Greenwich,* 75 N. J. 62, 379 A. 2d 848 (1977). The workers' compensation laws of the vast majority of States now make no distinction between the eligibility of widows and widowers for death benefits.

the earnings of a deceased husband and father covered by the Act both to his widow and to the couple's minor children in her care, but that granted benefits based on the earnings of a covered deceased wife and mother only to the minor children and not to the widower. In concluding that the provision violated the equal protection component of the Fifth Amendment, we noted that, "[o]bviously, the notion that men are more likely than women to be the primary supporters of their spouses and children is not entirely without empirical support." *Weinberger* v. *Wiesenfeld, supra,* at 645, citing *Kahn* v. *Shevin,* 416 U. S. 351, 354, n. 7 (1974).[4] But such a generalization could not itself justify the gender-based distinction found in the Act, for § 402 (g) "clearly operate[d] . . . to deprive women of protection for their families which men receive as a result of their employment." 420 U. S., at 645. The offensive assumption was "that male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support." *Id.,* at 643 (footnote omitted).

Similarly, in *Califano* v. *Goldfarb,* 430 U. S. 199 (1977), we dealt with a Social Security Act provision providing survivors' benefits to a widow regardless of dependency, but providing the same benefits to a widower only if he had been receiving at least half of his support from his deceased wife. 42 U. S. C. § 402 (f)(1)(D). MR. JUSTICE BRENNAN's plural-

---

[4] In *Kahn* v. *Shevin,* the Court upheld a Florida annual $500 real estate tax exemption for all widows in the face of an equal protection challenge. The Court believed that statistics established a lower median income for women than men, a discrepancy that justified "a state tax law reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden." 416 U. S., at 355. As in *Kahn* we accept the importance of the state goal of helping needy spouses, see *infra,* at 151, but as described in text the Missouri law in our view is not "reasonably designed" to achieve this goal. Thus the holding in *Kahn* is in no way dispositive of the case at bar.

ity opinion pointed out that, under the challenged section, "female insureds received less protection for their spouses solely because of their sex" and that, as in *Wiesenfeld,* the provision disadvantaged women as compared to similarly situated men by providing the female wage earner with less protection for her family than it provided the family of the male wage earner even though the family needs might be identical. *Califano* v. *Goldfarb, supra,* at 208. The plurality opinion, in the circumstances there, found the discrimination violative of the Fifth Amendment's equal protection guarantee.

*Frontiero* v. *Richardson,* 411 U. S. 677 (1973), involved a similar discrimination. There, a serviceman could claim his wife as a dependent without regard to whether she was in fact dependent upon him and so obtain increased quarters allowances and medical and dental benefits. A servicewoman, on the other hand, could not claim her husband as a dependent for these purposes unless he was in fact dependent upon her for over one-half of his support. This discrimination, devaluing the service of the woman as compared with that of the man, was invalidated.

The Missouri law, as the Missouri courts recognized, also discriminates against men who survive their employed wives' dying in work-related accidents. To receive benefits, the surviving male spouse must prove his incapacity or dependency. The widow of a deceased wage earner, in contrast, is presumed dependent and is guaranteed a weekly benefit for life or until remarriage. It was this discrimination against the male survivor as compared with a similarly situated female that MR. JUSTICE STEVENS identified in *Califano* v. *Goldfarb, supra,* as resulting in a denial of equal protection.[5] 430 U. S., at 217–224 (opinion of STEVENS, J.).

---

[5] As noted previously, see n. 3, *supra,* three state courts have recently held unconstitutional workers' compensation statutes with presumptions of dependency identical to that at issue in this case. In each of the three cases the court characterized the statute's discrimination as against both

150

## III

However the discrimination is described in this case, our precedents require that gender-based discriminations must serve important governmental objectives and that the discriminatory means employed must be substantially related to the achievement of those objectives. *Califano* v. *Westcott,* 443 U. S. 76, 85 (1979); *Orr* v. *Orr,* 440 U. S. 268, 279 (1979); *Califano* v. *Webster,* 430 U. S. 313, 316–317 (1977); *Craig* v. *Boren,* 429 U. S. 190, 197 (1976).

Acknowledging that the discrimination involved here must satisfy the *Craig* v. *Boren* standard, 583 S. W. 2d, at 164–165, the Missouri Supreme Court stated that "the purpose of the [law] was to favor widows, not to disfavor them" and that when the law was passed in 1925 the legislature no doubt believed that "a widow was more in need of prompt payment of death benefits upon her husband's death without drawn-out proceedings to determine the amount of dependency than was a widower." *Id.,* at 168. Hence, the conclusive presumption of dependency satisfied "a perceived need widows generally had, which need was not common to men whose wives might be killed while working." *Ibid.* The survivor's "hardship was seen by the legislatur[e] as more immediate and pronounced on women than on men," and "the substantive difference in the economic standing of working men and women justifies the advantage that [the law] administratively gives to a widow." *Ibid.*

working wives and surviving husbands. See *Arp* v. *Workers' Compensation Appeals Board,* 19 Cal. 3d, at 406, 563 P. 2d, at 855 ("[I]t is noteworthy that the conclusive presumption in favor of widows discriminates not only against the widower but against the employed *female* as well"); *Passante* v. *Walden Printing Co.,* 53 App. Div. 2d, at 12, 385 N. Y. S. 2d, at 181 (the statute "compels dissimilar treatment both for surviving husbands and working wives, respectively, vis-à-vis widows and working males"); *Tomarchio* v. *Township of Greenwich,* 75 N. J., at 75, 379 A. 2d, at 854 (statute unconstitutionally discriminates against both working women and surviving husbands).

Providing for needy spouses is surely an important governmental objective, *Orr* v. *Orr, supra,* at 280, and the Missouri statute effects that goal by paying benefits to all surviving female spouses and to all surviving male spouses who prove their dependency. But the question remains whether the discriminatory means employed—discrimination against women wage earners and surviving male spouses—itself substantially serves the statutory end. Surely the needs of surviving widows and widowers would be completely served either by paying benefits to all members of both classes or by paying benefits only to those members of either class who can demonstrate their need. Why, then, employ the discriminatory means of paying all surviving widows without requiring proof of dependency, but paying only those widowers who make the required demonstration? The only justification offered by the state court or appellees for not treating males and females alike, whether viewed as wage earners or survivors of wage earners, is the assertion that most women are dependent on male wage earners and that it is more efficient to presume dependency in the case of women than to engage in case-to-case determination, whereas individualized inquiries in the postulated few cases in which men might be dependent are not prohibitively costly.

The burden, however, is on those defending the discrimination to make out the claimed justification, and this burden is not carried simply by noting that in 1925 the state legislature thought widows to be more in need of prompt help than men or that today "the substantive difference in the economic standing of working men and women justifies the advantage" given to widows. 583 S. W. 2d, at 168. It may be that there is empirical support for the proposition that men are more likely to be the principal supporters of their spouses and families, *Weinberger* v. *Wiesenfeld,* 420 U. S., at 645, but the bare assertion of this argument falls far short of justifying gender-based discrimination on the grounds of administrative

convenience. Yet neither the court below nor appellees in this Court essay any persuasive demonstration as to what the economic consequences to the State or to the beneficiaries might be if, in one way or another, men and women, whether as wage earners or survivors, were treated equally under the workers' compensation law, thus eliminating the double-edged discrimination described in Part II of this opinion.

We think, then, that the claimed justification of administrative convenience fails, just as it has in our prior cases. In *Frontiero* v. *Richardson,* 411 U. S., at 689–690, the Government claimed that, as an empirical matter, wives are so frequently dependent upon their husbands and husbands so rarely dependent upon their wives that it was cheaper to presume wives to be dependent upon their husbands while requiring proof of dependency in the case of the male. The Court found the claimed justification insufficient to save the discrimination. And in *Reed* v. *Reed,* 404 U. S. 71, 76 (1971), the Court said "[t]o give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause. . . ." See also *Califano* v. *Goldfarb,* 430 U. S., at 219–220 (opinion of STEVENS, J.). It may be that there are levels of administrative convenience that will justify discriminations that are subject to heightened scrutiny under the Equal Protection Clause, but the requisite showing has not been made here by the mere claim that it would be inconvenient to individualize determinations about widows as well as widowers.

IV

Thus we conclude that the Supreme Court of Missouri erred in upholding the constitutional validity of § 287.240. We are left with the question whether the defect should be cured by extending the presumption of dependence to widowers or by eliminating it for widows. Because state legislation is at

issue, and because a remedial outcome consonant with the state legislature's overall purpose is preferable, we believe that state judges are better positioned to choose an appropriate method of remedying the constitutional violation. Accordingly, we reverse the decision of the Supreme Court of Missouri and remand the case to that court for further proceedings not inconsistent with this opinion.[6]

*So ordered.*

MR. JUSTICE REHNQUIST, continuing to believe that *Califano* v. *Goldfarb*, 430 U. S. 199 (1977), was wrongly decided, and that constitutional issues should be more readily reexamined under the doctrine of *stare decisis* than other issues,

---

[6] Appellees attempt to draw support from the fact that *Goldfarb* and *Wiesenfeld* arose in the context of the Social Security program. First, they argue, the statute at issue here, unlike a social insurance system that provides blanket survivorship benefits, seeks to compensate for specific economic loss to the worker or his dependents, and appellant can claim no such loss. Relatedly, a widower who suffers and can prove any loss of support is entitled to a corresponding level of benefits under § 287.240, whereas Mr. Goldfarb, under the Social Security Act provision, had to show that he had received at least one-half of his support from his wife at the time of her death. These arguments rely on the fact that covered widowers suffering provable economic loss will receive benefits corresponding to that loss under § 287.240, but they ignore the statute's discriminatory effect on working women by providing them with less protection for their families than working men. Appellees also argue that, unlike the Social Security program, the workers' compensation system is not based on mandatory contributions from past wage earnings of the employee. Thus appellant's late wife was not deprived of a portion of her earnings to contribute to a fund out of which her husband would not benefit. But we have before rejected the proposition that "the Constitution is indifferent to a statute that conditions the availability of noncontributory welfare benefits on the basis of gender," *Califano* v. *Westcott*, 443 U. S. 76, 85 (1979), and we refuse to part ways with our earlier decisions by applying a different standard of review in this case simply because the system is funded by employer rather than employee contributions.

dissents and would affirm the judgment of the Supreme Court of Missouri.

MR. JUSTICE STEVENS, concurring in the judgment.

Nothing has happened since the decision in *Califano* v. *Goldfarb,* 430 U. S. 199, to persuade me that this kind of gender-based classification can simultaneously disfavor the male class and the female class.

To illustrate my difficulty with the analysis in Part II of the Court's opinion, it should be noted that there are three relevant kinds of marriages: (1) those in which the husband is dependent on the wife; (2) those in which the wife is dependent on the husband; and (3) those in which neither spouse is dependent on the other.

Under the Missouri statute, in either of the first two situations, if the dependent spouse survives, a death benefit will be paid regardless of whether the survivor is male or female; conversely, if the working spouse survives, no death benefit will be paid. The only difference in the two situations is that the surviving male, unlike the surviving female, must undergo the inconvenience of proving dependency. That surely is not a discrimination against females.

In the third situation, if one spouse dies, benefits are payable to a surviving female but not to a surviving male. In my view, that is a rather blatant discrimination against males. While both spouses remain alive, the prospect of receiving a potential death benefit upon the husband's demise reduces the wife's need for insurance on his life, whereas the prospect of *not* receiving a death benefit upon the wife's demise increases the husband's need for insurance on her life. That difference again places the husband at a disadvantage.*

---

*There is no claim that the wage earner's take-home pay is affected by the Missouri statute. Whether the wage earner is single or married, and, if married, whether the other spouse is male or female, dependent or independent, the wage earner's pay is the same.

No matter how the statute is viewed, the class against which it discriminates is the male class. I therefore cannot join Part II of the Court's opinion. I do, however, agree that Missouri has failed to justify the disparate treatment of persons who have as strong a claim to equal treatment as do similarly situated surviving spouses, see *Califano* v. *Goldfarb*, *supra*, at 223 (STEVENS, J., concurring in judgment), and that its statute violates the Equal Protection Clause of the Fourteenth Amendment. For that reason I concur in the Court's judgment.