**Robert M. VITALE, Individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**Patricia Roberts HARRIS, Secretary, Department of Health and Human Services, Defendant.**

**No. 78–6551–CIV–EPS.**

United States District Court, S. D. Florida, Miami Division.

Feb. 12, 1981.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

SPELLMAN, District Judge.

THIS CAUSE came before the Court on Plaintiffs' and Defendant's cross motions for summary judgment. Upon review of the Recommendation of United States Magistrate Patricia Jean Kyle, and upon independent *de novo* review of the entire record herein, the Court finds as follows:

Plaintiff Robert M. Vitale was married to Marie Vitale on June 22, 1929. After approximately 33.5 years of marriage, the Vitales were divorced on January 4, 1963. Mr. Vitale never remarried.

Mrs. Vitale was a resident of Clifton, New Jersey when she died on August 4, 1974 at the age of 72. She was fully insured under Title II of the Social Security Act at the time of her death and had never received benefits provided for under the Act since she was continuously employed until the time of her death.

Mr. Vitale, a resident of Deerfield Beach, Florida, is 73 years of age. The record reveals that Mr. Vitale is eligible for Social Security Old Age Benefits on the basis of his own employment; but at an amount less than the primary insurance rate of the deceased Mrs. Vitale.

The Plaintiff applied for widower's insurance benefits on May 9, 1977 on the basis of his former marital relationship to Marie Vitale. Said claim was denied initially on September 19, 1977 and again upon reconsideration by notice dated December 6, 1977.[1] On December 12, 1977, the Plaintiff requested a hearing. During the January 13, 1978 proceeding before Jerome E. Lowen, the Administrative Law Judge explained to Mr. Vitale that it was not within his province to consider the constitutionality of the Social Security laws and that he was limited to properly administering said statutes as promulgated by Congress. [Transcript of January 13, 1978 hearing at page 10, lines 2–21]. Having found that the law was correctly applied in Mr. Vitale's case, the Administrative Law Judge upheld the denial of widower's benefits. After receiving notice of that decision, Mr. Vitale timely requested a review by the Appeals Council. By letter of October 20, 1978, the Appeals Council notified Mr. Vitale that it found no basis for granting his request for review and advised him of his right to commence a civil action in the United States District Court.

Having exhausted all appropriate administrative remedies, the Plaintiff instituted this action on December 26, 1978 challenging the constitutionality of the Social Security Administration's provision of insurance benefits to surviving divorced widows[2] but

1. The Reconsideration Determination states:
   The issue to be determined is whether Mr. Robert Vitale is entitled to widower's benefits. This depends upon whether the evidence in file establishes that he and the insured individual did enter into a valid marital relationship and such relationship continued until the insured individual's death.
   The initial denial of Mr. Vitale's claim was affirmed on the ground that he did not qualify as a widower as defined in 42 U.S.C. § 416(g) and was therefore not entitled to widower's benefits based on the earnings of Mrs. Vitale.

2. 42 U.S.C. § 402(e), entitled "Widow's insurance benefits," covers "[t]he widow ... and every surviving divorced wife ... of an individual who died a fully insured individual ...." The term "surviving divorced wife" is defined in § 416(d)(2) of that title as "a woman divorc-

not to surviving divorced widowers.[3] The Plaintiff alleges that said statutory framework denies him equal protection as guaranteed by the fifth amendment to the United States Constitution.

According to the record, Mr. Vitale meets the requirements of 42 U.S.C. § 416(d)(2) (defining "surviving divorced wife") and fulfills all of the conditions for entitlement to benefits set forth in 42 U.S.C. § 402(e) except that he is male, to-wit: a) he is not married; b) he has attained the threshold age; c) he filed an application for widower's insurance benefits; and d) the old-age benefits to which he is entitled pursuant to his own employment are less than the primary amount of his deceased ex-wife.[4] Accordingly, on January 31, 1980 the Court granted class certification to all surviving divorced widowers in the Southern District of Florida

who but for their sex would be eligible for benefits under section 202(e) of the Social Security Act, who have presented or will present a claim to the Secretary for Title II benefits under the Act, and who since October 26, 1978, have had or will have their claims denied at any level of their administrative process for the sole reason of the sex based statutory exclusion.

Determination of this case was deferred by agreement pending the outcome of *Ambrose v. Harris,* Civil No. 79–52 (D.Ore. July 17, 1980), wherein a class action was filed on behalf of:

All surviving divorced widowers in the United States excluding those who are residents of the District of Columbia, the

Eastern District of New York and the Southern District of Florida, who have presented a claim to the Secretary for Social Security Widower's Benefits and whose claims have been denied at any level of the administrative process, the written decision of which they received on or after November 24, 1978, for the sole reason that they are surviving divorced husbands rather than surviving divorced wives.

In rendering his Findings and Recommendation [hereinafter *"Ambrose"*],[5] United States Magistrate Edward Leavy examined the issue under the Supreme Court's two-pronged test for determining whether a gender-based statutory distinction can stand in the face of an attack on grounds of alleged unconstitutionality: 1) does the gender-based disequalization serve important governmental objectives? and 2) is the unconformity substantially related to achieving those goals? *Ambrose* at page 3, lines 16–23, citing *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Califano v. Webster,* 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); and *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

There, as here, the Defendant characterized the purpose behind the disparity as compensation for society's inveterate unequal treatment of women. The Magistrate recognized the Supreme Court's holding in *Califano v. Webster, supra,* that said resolution constitutes a rational governmental objective sufficient to justify a gender-

ed from an individual who has died, but only if she had been married to the individual for a period of 10 years immediately before the date the divorce became effective."

**3.** 42 U.S.C. § 402(f), "Widower's insurance benefits," includes only "[t]he widower ... of an individual who died a fully insured individual ...."

**4.** The Court also notes that identical criteria are set forth in 42 U.S.C. § 402(f) under which Mr. Vitale would also qualify if he were a widower rather than a surviving divorced husband.

**5.** By order entered July 16, 1980, the Magistrate's Findings were approved and adopted by the District Judge. On October 30, 1980, the Attorney General informed the United States Senate and House of Representatives that the United States would not appeal the District Court's judgment. On January 5, 1981, the Attorney General notified Congress that, in light of the decision not to appeal, the United States would no longer defend the constitutionality of 42 U.S.C. § 402(f).

based distinction.[6] However, it was noted that the legislative history of the statutes challenged in *Webster* disclosed "that Congress directly addressed the justification for differing treatment of men and women . . . and purposefully enacted the more favorable treatment for female wage earners to compensate for past employment discrimination against women." 430 U.S. at 318–20 *Ambrose* at page 4, lines 1–6. In contrast, the legislative history underlying the sections challenged herein was found to be comparatively inadequate to manifest an intent to redress past discrimination. "Instead, the legislative history shows that the failure to provide benefits for surviving divorced men was based on the casual assumption that women are more likely to be child rearers or dependents." *Ambrose* at page 4, line 30, to page 5, line 2. This Court finds that observation particularly accurate in light of the 1972 report on elimination of support requirements for divorced women, which states: "The intent of providing benefits to divorced women is to protect women whose marriages are dissolved when they are far along in years—particularly housewives who have not been able to work and earn social security protection of their own." 1972 U.S.Code Cong. & Admin.News at 4989, 5041.

Such presumptions of female dependency have been condemned by the Supreme Court as " 'archaic and overbroad' generalizations or 'old notions' that are more consistent with 'the role-typing society has long imposed' than with contemporary reality." *Califano v. Goldfarb*, 430 U.S. 199, 207, 97 S.Ct. 1021, 1027, 51 L.Ed.2d 270 (1977) [citations omitted]. Accordingly, this Court finds the sections under attack fail to meet the first step of the test of constitutionality for lack of an important governmental objective.

Turning to the other prong, the Court in *Ambrose* found "[t]he challenged sections also fail the second half of the constitutional test in that they are not properly related to achieving their alleged important governmental objective." *Ambrose* at page 5, lines 5–8. Assume, arguendo, that this Court had deemed "remedy for past discrimination" to be the actual purpose behind the divergent treatment and had further concluded that it was a valid governmental goal. To withstand a constitutional challenge the Court must additionally find a substantial relationship to achievement of that end. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

In *Wiesenfeld*, the Supreme Court declared unconstitutional 42 U.S.C. § 402(g), which provided survivors' benefits through a deceased male wage earner covered under the Act to both his widow and their minor children in her care; but allowed benefits based on a deceased female's earnings to be collected by the minor children only, with no coverage for the surviving widower. The Court found the distinction intolerable in that it assumed "male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support." *Id.* at 643, 95 S.Ct. at 1230. The Court held that the statutory scheme resulted in economic discrimination against the female wage earner based on the fact that she would not receive the same degree of protection for her family as would a similarly situated male wage earner.[7] *Id.*

---

**6.** In *Webster*, the Supreme Court upheld a gender-based distinction in 42 U.S.C. § 415 which allowed a female wage earner to exclude three more "lower earning years" than were excludable by a similarly situated male when computing the "average monthly wage," ultimately resulting in an increased grade of monthly old-age benefits for the retired female worker.

**7.** The *Ambrose* Court expanded on the ramifications of such a structure not only to the individual wage earner, but to her family as a whole:

A statutory scheme with such an effect is impermissible primarily because it tends to encourage women to limit their activities to those commonly associated with outdated stereotypical roles. *See Wiesenfeld, supra.* A two parent family which has decided that one parent will be a wage earner and the other a child rearer when faced with the present statutory scheme is encouraged to designate the male as the wage earner. Only by having the male the wage earner can they be assured of maximum protection under the

at 645, 95 S.Ct. at 1231. In addition, the female worker was required to pay social security taxes into the system at a rate identical to that of a male of comparable position; while the benefits derived from that same system were not equally available to her. *Id.*

Two years later, the Supreme Court examined another gender-based distinction in the Social Security Act under which a widow would automatically receive survivors' benefits based on the earnings of her deceased husband, 42 U.S.C. § 402(e); but a widower would only be entitled to the same upon a showing of dependency on his deceased wife, 42 U.S.C. § 402(f). *Califano v. Goldfarb, supra.* There, the Court found the inequity offensive not only because it operated to deprive female contributors of the same protection accorded to their male counterparts; but also because it discriminated against surviving widowers.[8] *Id.* at 207–209, 97 S.Ct. at 1027–1028.

That double discrimination issue recently reappeared when the Supreme Court scrutinized a Missouri workers' compensation statute which also required widowers to demonstrate proof of incapacity or dependency on their deceased wives' earnings; while widows were not subject to said burden. *Wengler v. Druggists Mutual Insurance Co.,* 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 (1980). Reiterating its earlier decisions in *Wiesenfeld, supra, Goldfarb, supra,* and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), the Court found the law violative of the fourteenth amendment Equal Protection Clause in that it prejudiced both working wives and surviving husbands.

The Court finds the section under review here even more pernicious in that it arbitrarily denies benefits to divorced widowers without at the very least affording them an opportunity to demonstrate need or dependency. Whether the focus is solely on the female wage earner's predicament or the situation is analyzed from the perspective of the surviving divorced widower, application of the statute as it now stands mandates an inequitable distribution of economic benefits without satisfactory justification. If the true motive behind the gender-based distinction here *had* been to remedy past employment discrimination against women, Congress' objective was certainly not achieved by the enactment of legislation which further operates to the prejudice of female wage earners. In fact, it appears that Congress has compounded, rather than alleviated, the problem. Thus, 42 U.S.C. § 402(f) also fails to withstand the Supreme Court's second inquiry in that it is not substantially related to achieving the alleged goal of redressing prior inequities.

Accordingly, this Court concurs in and fully adopts the holding in *Ambrose, supra,* that "42 U.S.C. § 402(f) is unconstitutional in that it violates the equal protection of the laws aspect of the due process clause of the Fifth Amendment to the United States Constitution." *Ambrose* at page 6, lines 11–15. The Court realizes that its holding today may result in overinclusiveness of the social security laws. However, it is not the function of this Court, nor the Court in *Ambrose,* to evaluate the economic impact of these decisions. Instead, it is incumbent upon the Court to apply the law as written. The question of reestablishing the factors

---

Act. If the woman becomes the wage earner, the family unit is penalized.
*Ambrose* at page 5, lines 18–28.

**8.** In a concurring opinion, Mr. Justice Stevens agreed that the statutory scheme was unconstitutional, but defined the affected class as surviving male spouses only. 430 U.S. at 217–218, 97 S.Ct. at 1032–1033 (Stevens, J., concurring). He concurred in the majority's finding that the statutory imbalance resulted from the traditional stereotyping of females as dependents and concluded that "this discrimination against a group of males is merely the accidental by-

product" of that erroneous assumption. *Id.* at 223, 97 S.Ct. at 1035.

Mr. Justice Stevens reaffirmed that position in *Wengler v. Druggists Mutual Insurance Co.,* 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 (1980), where he wrote: "Nothing has happened since the decision in *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 to persuade me that this kind of gender-based classification can simultaneously disfavor the male class and the female class." *Id.* at 154, 100 S.Ct. at 1547 (Stevens, J., concurring).

of need and/or dependency as a prerequisite to entitlement to old-age benefits for surviving divorced individuals must be addressed by Congress; not the judiciary.[9] Based on the above and foregoing, it is

ORDERED AND ADJUDGED that Summary Judgment be and the same is hereby GRANTED in favor of the Plaintiff.

9. The Court notes that administrative realities of the system may very well preclude the feasibility of such a requirement.