**MANUFACTURERS HANOVER TRUST COMPANY, as Executor of the Estate of Charlotte C. Wallace, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 82 Civ. 724 (CES).

United States District Court, S.D. New York.

Oct. 17, 1983.

Kelley, Drye & Warren by Robert E. Crotty, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty. by David M. Jones, Asst. U.S. Atty., New York City, for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

This action is brought by Manufacturers Hanover Trust Company, as executor of the estate of Charlotte C. Wallace ("Estate"). Plaintiff challenges the Commissioner of Internal Revenue's ("Commissioner") use of gender-based mortality tables in calculating the present value of the rever-

sionary interest in the trust of the decedent. This valuation determines whether the trust may be included in the estate of a decedent and therefore, be taxable. Plaintiff instituted this action for the refund of federal estate taxes from the United States of America ("Government").[1] Jurisdiction in this court is based on 26 U.S.C. § 7422 and 28 U.S.C. §§ 1331, 1346(a)(1). Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). We begin with a description of the undisputed facts.

On November 5, 1923, Charlotte Wallace established a trust and retained the right to the trust's income for her life. At the same time, she named her son Howard the beneficiary, to receive the income from the trust after her death. Charlotte also retained a reversionary interest in the trust income if her son predeceased her. On February 28, 1976, Charlotte died at the age of 88, and was survived by her son, who was 57 years old at the time.

Internal Revenue Code § 2037 provides that the value of a decedent's reversionary interest in a trust is includable in the decedent's gross estate if the value of that reversionary interest, immediately before the decedent's death, exceeds 5 percent of the value of the corpus. The Treasury Regulations ("Regulations")[2] provide both the actuarial tables and formulas to be used to calculate the value of the reversionary interest. Under the Regulations, the value of the reversionary interest is a function of the life expectancies of both the decedent and the trust beneficiary. The tables employed give one set of life expectancies for men and another for women.

The parties agree that the decedent in this case retained a reversionary interest within the meaning of section 2037, and that the present value of her reversionary interest exceeded the 5 percent limit when calculated with the sex-based mortality tables contained in the Treasury Regulations at issue. The parties further agree that the sex-based tables would yield the following results in the following situations:

| Sex and Age of Decedent | Sex and Age of Beneficiary | Present Value of Reversionary Interest |
|---|---|---|
| Female age 88 | Male age 57 | .06654 |
| Male age 88 | Male age 57 | .06415 |
| Female age 88 | Female age 57 | .03520 |
| Male age 88 | Female age 57 | .03390 |

Finally, the Government admits that the value of the reversionary interest is below the 5 percent limit, and thereby not taxable, when calculated under the gender-neutral tables called for by the plaintiff.[3]

The plaintiff challenges the Commissioner's use of the gender-based mortality tables on two grounds: first, that such tables exceed the Commissioner's statutory authority to promulgate regulations containing actuarial tables; and second, that such tables constitute impermissible gender discrimination that deprives the plaintiff of due process of law guaranteed by the fifth amendment. We address each of the grounds in turn.

## I. The Secretary's Statutory Authority to Promulgate the Regulations

Plaintiff argues that the Regulations are beyond the authority granted to the Secretary by I.R.C. § 2037. Section 2037 provides in pertinent part:

The value of a reversionary interest immediately before the death of the dece-

---

**1.** On November 26, 1976, the Estate filed a federal tax return and did not list the trust which was valued at $1,244,863.64 as of the date of Charlotte's death, as an asset. On January 3, 1980, the Commissioner assessed a deficiency in the amount of $458,662.18. On August 22, 1980, the Estate paid the deficiency and filed an administrative claim for a refund which was subsequently denied. The instant action followed.

**2.** The Treasury Regulations in question are: 26 C.F.R. §§ 20.2037–1(c)(3), 20.2031–7(a)(d)(e), 20.2031–10(d)(e)(f). These regulations, *United*

*States Life Tables: 1959–61* are published by the Dep't of Health, Education and Welfare, Public Health Service.

**3.** The mortality tables upon which plaintiff bases its claim are taken from the same source as the Commissioners' gender-based tables, the *United States Life Tables: 1959–61,* published by the Dep't of Health, Education and Welfare, Public Health Service. Under these unisex tables, the value of decedent's reversionary interest would be 4.9867%.

dent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, under regulations prescribed by the Secretary.

Plaintiff argues that this section did not authorize the Secretary to promulgate regulations that employ sex-based distinctions. We reject this argument.

The cases that plaintiff relies upon to argue that the Regulations are beyond the Secretary's statutory authority hold that the Secretary is authorized to promulgate regulations using an actuarial approach, which do not consider the actual health and physical condition of the beneficiary or decedent immediately prior to death. *See Estate of Allen v. United States*, 558 F.2d 14, 214 Cl.Ct. 630 (1977); Rev.Rul. 66–307, 1966–2 C.B. 429; *Estate of Dwight B. Roy, Jr.*, 54 T.C. 1317 (1970); *Robinson v. United States*, 454 F.Supp. 1160 (N.D.Cal.1978), *aff'd*, 632 F.2d 822 (9th Cir.1980). Yet the finding that the Secretary *need* not issue regulations that take into account factors other than age is greatly different from the conclusion that the Secretary *may* not. Indeed, as the Court of Claims noted in *Estate of Allen*, nothing in this legislative history specifically precludes such extrinsic considerations, or even specifically says that mortality tables are the sole method of valuation. 558 F.2d at 18. The question under section 2037, therefore is whether the sex-based tables represent a "usual method of valuation." We find nothing in the record that suggests they are not, and the cases and commentaries certainly suggest they are commonly used. *See, e.g., Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 725–26, 98 S.Ct. 1370, 1384, 55 L.Ed.2d 657 (1978) (Burger, J. dissenting) ("Gender-based actuarial tables have been in use since at least 1843, and their statistical validity has been repeatedly verified. The vast life insurance, annuity and pension plan industry is based on these tables" (footnote omitted)). We thus conclude that the promulgation of the Regulations was not beyond the delegation of authority in section 2037.

## II. Constitutionality of the Regulations

The cross-motions for summary judgment on the issue of the constitutionality of the Treasury Regulations present three distinct issues: 1) do the Regulations discriminate on the basis of sex? 2) if so, does the plaintiff here have standing to raise a constitutional challenge to them? and 3) if so, is this discrimination impermissible under the fifth amendment?

With respect to the first question, it appears clear that the Regulations do discriminate on the basis of sex. The Regulations set forth two separate sets of tables, with the sexes of the decedent and the transferee the factors that determine which table is to be used. The Government argues that the Regulations do not discriminate on the basis of sex because the tax is assessed against an estate "—a legal fiction that is separate and distinct from the decedent and that, of course, lacks any gender." Memorandum of Law in Opposition at 24. Inasmuch as the Regulations refer to the sex of the decedent to value assets contained in the estate, however, they distinguish between the estates *of women* and the estates *of men*. Accordingly, we find this argument without merit.

The government further argues that the Regulations do not discriminate on the basis of sex because "whether the transfer is in fact includable in the gross estate ... turns on the value of the transferor's reversionary interest, not his sex." *Id.* at 25. The Government continues: "The value of the reversionary interest, in turn, depends solely upon the probable longevity of the decedent and the transferee (discounted to present value), as derived by usual accounting measures." *Id.* at 25. In making this argument, however, the Government fails to take the crucial final step that defeats its cause: under the Regulations, "probable longevity" is determined on the basis of sex. It is this last step that we deem the most significant, and thus we reject this argument by the Government as well.

The Government finally argues that the Regulations do not discriminate on the basis of sex because the Trust would have been taxable to the estate if Mrs. Wallace had been a man. This argument confuses a standing question with the question of the basis upon which the Regulations distinguish between two otherwise similarly situated individuals. The fact that the tables yield different values in Mrs. Wallace's case and in a hypothetical case involving an 88 year old male decedent is evidence that the tables do distinguish on the basis of sex.

As for plaintiff's standing to bring a constitutional challenge to these sex-based Regulations, we believe the plaintiff in this case has established injury in fact sufficient to guarantee "concrete adverseness." *Craig v. Boren,* 429 U.S. 190, 194, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). Plaintiff is the executor of the estate of Charlotte Wallace. As such, plaintiff has a duty to act for the best interest of all parties interested in the estate. *In re Dickson's Estate,* 38 Misc.2d 678, 237 N.Y.S.2d 572 (Surr.Ct. 1963). It is undisputed that through the use of sex-based tables rather than the unisex tables that plaintiff proposes, the estate is required to pay some $450,000 in taxes that it would not otherwise be required to pay.

With respect to the Government's argument that this case should be dismissed because the Trust would have been included in the estate if Mrs. Wallace had been a man, we believe the more important inquiry is whether the Trust would be includable under the non-sex-based scheme. Under such a table, plaintiff would pay no taxes. It is clear that plaintiff has shown the requisite "causal connection between the injury it claims and the conduct it challenges, so that if the relief sought is granted, the injury will be redressed." *Watt v. Energy Action Educational Foundation,* 454 U.S. 151, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981) (citation omitted).

Having determined that the challenged Regulations discriminate on the basis of sex and that plaintiff has standing to raise a constitutional challenge to them, the next inquiry is whether the Regulations' discrimination is constitutionally permissible.

The usual standard by which gender-based classifications are judged is one of heightened scrutiny. *See, e.g., Mississippi University for Women v. Hogan,* 458 U.S. 718, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982); *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). As was stated in *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976):

> To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives.

The party seeking to uphold the statute must show an "exceedingly persuasive justification" for classification. *Kirchberg v. Feenstra,* 450 U.S. 455, 461, 101 S.Ct. 1195, 1199, 67 L.Ed.2d 428 (1981). *See Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979).

In this case, however, the Government argues that a lower level of scrutiny is appropriate because the law at issue is a tax regulation. While it is true that tax legislation is traditionally accorded great deference, *see, e.g., Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940), deference does not mean that all legislation touching upon internal revenue matters is immune from all constitutional strictures. A tax law that employed "suspect classifications", for instance, would not be tolerated, let alone deferred to. *See Regan v. Taxation With Representation of Washington,* —— U.S. ——, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983).

*Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), cited by the Government in support of its argument that minimal scrutiny is appropriate, does

not persuade us of the Government's position. *Kahn* found constitutional a Florida statute granting widows, but not widowers, a property tax exemption. In upholding the statute, Justice Douglas found that the purpose of the statute was to "further that state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden." 416 U.S. at 355, 94 S.Ct. at 1737. The differing treatment of widows and widowers, Justice Douglas noted, "rest[ed] upon some ground of difference having a fair and substantial relation to the object of legislation". *Id.* (quoting *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 1254, 30 L.Ed.2d 225 (1971)). Thus while *Kahn* does cite earlier cases applying a rational relation test to tax legislation, it in fact applied *Reed's* heightened scrutiny test. We thus conclude the "middle tier" level of scrutiny, as articulated in *Craig v. Boren*, is appropriate in this case.

 As stated above, in order to withstand a constitutional attack, a gender-based classification must further a legitimate and important state objective. It must also exhibit a direct and substantial relationship between the objective and the means employed. *Mississippi University for Women v. Hogan*, 102 S.Ct. at 3337. The requirement of a close relationship is to insure that statutes which rely on gender as a "proxy for other, more germane bases of classification," *Craig v. Boren*, 429 U.S. at 198, 97 S.Ct. at 457, will not be upheld.

According to the Government, the important objective these Regulations seek to achieve is an accurate determination of the present value of a decedent's reversionary interest in a trust. The Government contends that the gender-based tables provide a more accurate forecast of life expectancy, and therefore, enable the Commissioner to tax estates based on actual worth, rather than an estimated value. This objective, however, will not be considered an "important" one if it is not sufficiently tailored to meet the objective, *Craig v. Boren*, 429 U.S. at 197–98, 97 S.Ct. at 456–457, or if it

is being used merely for administrative convenience. *Frontiero v. Richardson*, 411 U.S. 677, 690, 93 S.Ct. 1764, 1772, 36 L.Ed.2d 583 (1973); *Stanley v. Illinois*, 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972); *Reed v. Reed*, 404 U.S. 71, 76–77, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).

 In this case, there appear to be questions of fact as to whether the Government's objective is an "important" one, or whether administrative convenience is not the actual goal. However, we need not resolve this factual issue because we find that, assuming the importance of the Government's goal, the sex-based classifications do not have the requisite direct and substantial relationship to the objective of a more accurate valuation of a reversionary interest.

It has been said that gender-based tables are in fact but a proxy for other factors which enter into longevity, such as smoking habits, alcohol consumption, medical history or family history. *See Manhart*, 435 U.S. at 709–710, 98 S.Ct. at 1375–1376. The fact that longevity statistics have been kept on the basis of gender, and thus are a shorthand method of achieving some degree of precision in the valuation of a reversionary interest, does not justify their continued use in the name of accuracy. *See Manhart*, 435 U.S. at 710, 98 S.Ct. at 1376. The Government's admittedly important goal of accuracy blurs into an administrative convenience argument, which is not a constitutionally permissible basis for a gender classification. *Frontiero*, 411 U.S. at 690, 93 S.Ct. at 1772; *Stanley v. Illinois*, 405 U.S. at 656, 93 S.Ct. at 1215.

According to the statistics upon which these tables are based, only 20% of all women actually do outlive men. As the Supreme Court noted, while women as a class live longer than men,

[i]t is equally true, however, that all individuals in the respective classes do not share the characteristic that differentiates the average class representative. Many women do not live as long as the average man and many men outlive the

average women. *Manhart*, 435 U.S. at 708, 98 S.Ct. at 1375.

In the Title VII context, the Supreme Court has clearly stated that sex cannot be used to predict longevity because it results in discrimination against individual women who do not fit the statistical norm. *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris*, — U.S. —, 103 S.Ct. 3492, 3498, 77 L.Ed.2d 1236 (1983); *Manhart*, 435 U.S. at 708, 98 S.Ct. at 1375. The use of sex-based tables in this case also results in discrimination against individuals. The Treasury Regulations serve to penalize the woman who dies before her statistically predicted age, while at the same time penalizing the man who dies after his predicted age.

▆▆▆▆▆ Like Title VII, the equal protection component of the fifth amendment is concerned with individual rights, which should not be determined on the basis of class composites.[4] *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *Frontiero*, 411 U.S. at 686, 93 S.Ct. at 1770. Many statutes struck down as discriminatory on the basis of gender under the fifth or fourteenth amendment contained presumptions about financial needs, sophistication in business matters and proclivities for drunken driving that the Supreme Court acknowledged may have been empirically based. *See, e.g., Weinberger v. Wiesenfeld*, 420 U.S. 636, 645, 95 S.Ct. 1225, 1231–1232, 43 L.Ed.2d 514 (1975); *Wengler v. Druggists Mutual Ins. Co.*, 446 U.S. 142, 151, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107

(1980); *Craig v. Boren*, 429 U.S. at 201–202, 97 S.Ct. at 459. Any statistical argument to justify class treatment on the basis of gender is questionable:

> It is unrealistic to expect either members of the judiciary or state officials to be well versed in the rigors of experimental or statistical technique. But this merely illustrates that proving broad sociological propositions by statistics is a dubious business, and one that inevitably is in tension with the normative philosophy that underlies the Equal Protection Clause. *Craig v. Boren*, 429 U.S. at 204, 97 S.Ct. at 460.

Where only 20% of the members of the class comport with the generalization that this regulation embodies, the effect on individual rights is substantial. Moreover, the use of the statistics cannot be said to have a direct and substantial relationship to the accurate valuation of any one individual's reversionary interest.

The Government asserts that the challenged classification is permissible because men and women are not similarly situated with respect to longevity. The cases that the Government relies on for this statement are distinguishable.[5] In addition, this argument once again presumes that the different life expectancies for men and women reflect some "innate differences" between the sexes, as opposed to being a proxy for other, gender-neutral factors. *Manhart*, 435 U.S. at 709–10, 98 S.Ct. at 1375–1376.

The Government has simply not made a strong enough showing that sex-based tables are necessary to achieve their goal of

---

**4.** As recently stated by the Supreme Court, "The Due Process Clause imposes on the Federal Government requirements comparable to those that the Equal Protection Clause of the Fourteenth Amendment imposes on the states." *Regan v. Taxation with Representation of Washington*, — U.S. —, 103 S.Ct. 1997, 1999, n. 2, 76 L.Ed.2d 129 (1983).

**5.** In *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), the challenged statute drew classifications along the lines of past military service, not sex. In both *Michael M. v. Superior Ct. of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67

L.Ed.2d 437 (1981) (statutory rape laws) and *Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (combat duty), the Supreme Court upheld statutes which "realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M.*, 450 U.S. at 469, 101 S.Ct. at 1204. In both *General Electric v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) and *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), the Supreme Court upheld statutes which did not include pregnancy as a disability, denying petitioners' claims of sex discrimination.

accuracy in evaluating reversionary interests. There are more accurate ways to achieve their end, which do not take sex into account. The Government has also made no showing that the proposed unisex tables are substantially less accurate than the current ones in use; indeed, until 1970, unisex tables were used by the Treasury.

Finally, the use of sex-based tables in the tax context is particularly inappropriate where the statistics are not being used in any predictive sense. The use of gender based tables to compute pension benefits was precluded by the Supreme Court in the Title VII context despite strong equity arguments: pay-ins and pay-outs in the benefits area are directly affected by longevity and the accuracy of the predictions. In this case, the decedent and trust beneficiary have either beaten or not beaten the statistics. The process of valuation is more abstract, yet individuals are penalized on the basis of a class composite.

The standards for summary judgment pursuant to Fed.R.Civ.P. 56(c) are well established. The burden is on the moving party to "demonstrate the absence of any material factual issue genuinely in dispute." *American International Group, Inc. v. London American International Corp. Ltd.*, 664 F.2d 348 (2d Cir.1981) (quoting *Reyman v. Commerce and Industry Insurance*, 524 F.2d 1317, 1319–20 (2d Cir.1975). Since the Government admits that the use of non gender-based tables will result in the trust's exclusion from the decedent's gross estate for tax purposes, the case is well suited for summary judgment.

The Government has failed to sustain its burden of demonstrating that the Treasury Regulations are substantially related to its important objective of determining the present value of reversionary interests. It is our determination that the challenged classifications constitute impermissible gender-based discrimination, and therefore, we grant plaintiff's motion for summary judgment and deny the Government's cross-motion.

SO ORDERED.