454 So.2d 426 (1984)
Sherry Joe Davis OWENS, Plaintiff-Appellee,
v.
CITY OF JENNINGS MUNICIPAL FIRE & POLICE CIVIL SERVICE BOARD, Defendant-Appellant.
No. 83-809.
Court of Appeal of Louisiana, Third Circuit.
August 23, 1984.
F. Jefferson Millican & Andre Buisson, Jennings, for defendant-appellant.
*427 Charles L. Bull, Jr., Welsh, for plaintiff-appellee.
Before LABORDE, YELVERTON and KNOLL, JJ.
LABORDE, Judge.
Sherry Joe Davis Owens, plaintiff, appealed to the district court from defendant's, City of Jennings Municipal Fire & Police Civil Service Board, affirmance of her dismissal from employment as a police officer. The district court held that Owens was improperly discharged on the basis of having committed an alleged "immoral act" constituted by her unwed pregnancy. The court ordered reinstatement and back pay. Defendant appeals. We affirm.

FACTS
Sherry Owens divorced her husband on April 7, 1980. She was subsequently employed by the City of Jennings in July 1980 as a police officer. The record reflects that she received an average score on the civil service exam and that she engaged in extensive training, meeting all of the necessary qualifications and requirements to be a policewoman.
On July 20, 1981, Sherry was granted a leave of absence, with pay, in connection with her first unwed pregnancy and childbirth. She returned nearly one year after leave and continued to perform well as a policewoman. On or about February 3, 1983, Merrion Taylor, Chief of Police, learned that Sherry was pregnant again. It appears that she was nearly seven months pregnant before Chief Taylor became aware of it. This was the second unwed pregnancy from the inception of her employment.
On February 4, 1983, Sherry received a notice by mail from Chief Taylor that her employment as a police officer was terminated because of her "immoral conduct". The mayor and chief of police dismissed her on the basis of LSA-R.S. 33:2560(A)(5) which proscribes conduct of a discourteous or wantonly offensive nature toward the public or any municipal officer or employee, and any dishonest, disgraceful or immoral conduct. Simply stated, the mayor and chief of police considered her second unwed pregnancy to constitute "immoral conduct".
Sherry appealed her dismissal before the Civil Service Board, to no avail. She then sought judicial review in the district court. The district court reversed the civil service ruling on the basis that LSA-R.S. 33:2560(A)(5) failed to define "immoral conduct" and, further, that such application of the law offended the constitutional requirements of equal protection of the law. The court refused to classify an unwed pregnancy as "immoral conduct" within the meaning of the statute in the absence of definite standards, and ordered reinstatement of plaintiff with back pay.
Defendant appeals from this trial court judgment.

UNWED PREGNANCYIMMORAL CONDUCT?
The sole issue on appeal is whether Sherry's unwed pregnancy, within the meaning of LSA-R.S. 33:2560(A)(5), gives rise to "immoral conduct" thereby constituting a valid basis for terminating her status as a civil service police officer. LSA-R.S. 33:2560(A)(5) provides:
"§ 2560. Corrective and disciplinary action for maintaining standards of service
A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service or take such disciplinary action as the circumstances warrant in the manner provided below, for any one of the following reasons:
* * * * * *
5. Conduct of a discourteous or wantonly offensive nature toward the public or toward any municipal officer or employee, and any dishonest, disgraceful or immoral conduct."
*428 The defendant argues that Sherry failed to give notice of her pregnancy and that by virtue of her unwed status she has in fact committed an "immoral" act worthy of discharge from her job. The defendant further states in brief that Sherry's pregnancy poses grave risks of harm, to herself and the unborn, in her line of duty as a policewoman. We note that for Sherry's first pregnancy, her supervisor gave her less cumbersome duties during her final months of pregnancy.
Although we agree with the latter contention, that a seven-month pregnancy may interfere with a female police officer's proper and adequate administration of her duties because of the potential harm to herself or the unborn, we do not find that Sherry Owens was terminated for that reason. Rather, the record indicates that she was terminated from employment for having engaged in sex out of wedlock which resulted in a pregnancy for which the defendant deems "immoral conduct". In the course of the civil service hearing, counsel for defendant remarked:
"The whole act of the conjugation outside of the marital bed, the conception that occurred as a result of the conjugation outside of the marital, legal marital bed, and the pregnancy, and, we hope, the very safe birth of an illegitimate child. Those are what we are saying are the acts of conduct that are immoral. Now, how else can we say it? He said it five times, ten times now." (Tr. 53)
The trial court succinctly addressed the issue in this case. We fully agree with the following excerpt of the reasons for judgment articulated by the trial judge.
"Another question is raised as to the fact of discrimination against this police officer because she is a woman. The court feels that this is true. There is reliance on the fact that by an unmarried becoming pregnant, she, therefore, has conducted herself in an immoral fashion. Had she not become pregnant she could have been living with or sleeping around in any number of situations for which there would have been no penalty. The same thing would be true of a man who may be unmarried, a police officer or a fireman, and living with someone else by whom he may have a number of illegitimate children. Isn't his immoral conduct, too, then the same and should he not be discharged under the same reasoning as applied by the board in this case. The fact that he does not become pregnant, therefore, eliminates him from the immoral conduct.
Until such time as the city or the state tells us what immoral conduct is and provides standards to be applied to determine the immoral conduct, the statute has no meaning and is actually unfair to employees of either a fire or a police department, and particularly if a woman is involved.
Therefore, the opinion of this court is that the police patrolman, Sherry Jo D. Owens, was wrongfully dismissed by the City of Jennings, and she is ordered reinstated with pay except for such time as she would be allowed to be off duty for the delivery of her child and postnatal care.
We note that the legislature may provide gender-based laws for special problems of women without offending the equal protection clause. Michael M. v. Superior Court of Sonoma Cty., 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981). However, the gender-based application of the present statute by the defendant cannot withstand constitutional challenge. The imposition and enforcement of the "moral" portion of the statute only against unwed and pregnant women is not substantially related to the achievement of any important governmental objective. The facts are clear that had Sherry been married, the termination would not have occurred. Further, the portion of the statute under which she was discharged fails miserably in proscribing what is "immoral".
The party asserting or defending such a challenged classification carries the burden of demonstrating both the importance of the governmental objective it serves and the substantial relationship between *429 the discriminatory means and the asserted end. Wengler v. Druggists Mut. Ins. Co., 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 (1980). The defendant's governmental importance and objective in terminating the job of an unwed and pregnant policewoman because of the appearance of "immorality" as defined by the chief of police and mayor does not accomplish any meaningful ends. Such action is invidiously discriminatory not only as to women, but, moreover as to unwed women who choose to have children. Regardless of the social taboo placed upon unwed pregnancies, the right of a woman to engage a pregnancy should not be restricted by arbitrary application and enforcement of governmental standards that do not exist, or by laws that are ill defined. U.S. CONST. amend. IX; See, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).
For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.